IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47443

| | | |
|---|---|---|
| In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: February 11, 2020 |
| Petitioner-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | |
| JANE DOE (2019-31), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie Tucker, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Public Defender; Scott J. Davis, Deputy Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kathryn T. Garrett, Deputy Attorney General, Caldwell, for respondent.

---

LORELLO, Judge

Jane Doe (2019-31) appeals from a judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of a child born in 2011. The child was placed in shelter care after police received a report of parental substance abuse and the child being left without a caregiver. The magistrate court awarded legal custody of the child to the Idaho Department of Health and Welfare and approved a case plan for Doe in November 2017. The child was placed with Doe's

1

brother and his wife. In March 2018, Doe's brother and his wife moved to New York and the magistrate court approved an out-of-state placement with them. Ultimately, the Department filed a petition to terminate Doe's parental rights. Following trial, the magistrate court terminated Doe's parental rights after finding clear and convincing evidence that Doe had neglected the child and termination is in the child's best interests. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe raises two issues on appeal. First, Doe contends that it was impossible for her to complete her case plan due to the child's removal from the state and placement in New York. Second, Doe contends that the Department's reasonable efforts should be examined on appeal, and the lack of reasonable efforts should be a defense to termination notwithstanding the absence of such a requirement in the statute governing termination. We affirm the decision of the magistrate court terminating Doe's parental rights.

## A.    Reviewability of Reasonable Efforts

We first address Doe's arguments regarding the reviewability of the Department's reasonable efforts at reunification. Doe contends that, in Idaho, termination of parental rights may occur even if the Department has made no reasonable efforts at reunification. Doe argues this alleged defect potentially jeopardizes federal funding for Idaho's foster care system. Finally, Doe asserts "there is no way to review" a finding that the Department has made reasonable efforts other than on a "limited basis" during the child protection case. Doe argues that due process requires "more." We disagree.

Doe's contention that parental rights may be terminated without any reasonable efforts is not supported by law. The Child Protective Act requires reasonable efforts. A petition for removal from the home must state that reasonable efforts were made to prevent removal from the home or that reasonable efforts to prevent placement were not required due to aggravated circumstances. I.C. § 16-1610(2)(i)(iii). Once a child is taken into shelter care, the magistrate court must conduct a hearing and make a determination regarding the Department's reasonable efforts. I.C. § 16-1615(5)(b). The magistrate court must also make findings regarding reasonable efforts at the adjudicatory hearing in order to vest custody in the Department. I.C. § 16-1619(6). These findings include whether the Department made reasonable efforts to prevent placement of the child in foster care. *Id*. If the child is placed in the Department's custody, the Department must prepare a case plan that sets forth reasonable efforts that will be made to make it possible for the child to return home. I.C. § 16-1621(3). The case plan must be approved by the court and, after approval, the plan is entered as a court order that includes a requirement that reasonable efforts be made to reunify in a timely manner in accordance with the case plan. I.C. § 16-1621(5). The case plan is then subject to review every six months. I.C. § 16-1622(1). One purpose of the review hearings is to assess permanency. I.C. § 16-1622. A permanency hearing must be held no later than twelve months from removal or from the order placing jurisdiction in the Department, whichever occurs first, at which the court must approve, reject, or modify the permanency plan and review progress in accomplishing the permanency goal. I.C. § 16-1622(2)(b). In this context, the court is required to make written, case-specific findings whether the Department made reasonable efforts to finalize the primary permanency goal in effect for the child. I.C. § 16-1622(2)(c). A lack of reasonable efforts to reunify may be

3

a basis for an order approving a permanency plan with the goal of reunification. *Id.* Once the child has been in the temporary or legal custody of the Department for fifteen of the most recent twenty-two months, the Department shall file a petition to terminate parental rights. I.C. § 16-1622(2)(g). There are exceptions to this requirement, including where the Department has failed to provide reasonable efforts to reunify the child with his or her family. I.C. § 16-1622(2)(g)(iii). In short, reasonable efforts are an ongoing consideration throughout the child protection case.[1]

Although Doe contends that Idaho's treatment of the federal reasonable efforts requirement "arguably" jeopardizes federal subsidies for foster care, she does not present any argument explaining why such funding could be at risk and her reference to 45 C.F.R. § 1356.21 does not support her assertion. The applicable federal regulation only conditions foster care funding in an individual case on a judicial determination that reasonable efforts were made to prevent removal and finalize the permanency plan. 45 C.F.R. § 1356.21(b) (2012); *see also* 42 U.S.C.A. § 671 (2019). As described above, the requirements attendant to the child protection proceedings include reasonable efforts throughout.[2]

The Department's reasonable efforts, and a magistrate court's findings regarding reasonable efforts, are subject to appellate review. There is a statutory right to appeal at several points during the pendency of the child protection proceeding. I.C. § 16-1625(1). An aggrieved parent may appeal an adjudicatory decree, any order subsequent to the adjudicatory decree that vests legal custody in the Department, and any order subsequent to the adjudicatory decree that authorizes or mandates the Department to cease reasonable efforts. *Id.* Although Doe acknowledges that review of reasonable efforts is provided for in the child protection case pursuant to I.C. § 16-1625(1), she does not explain why this review does not satisfy due process. It appears Doe's argument is instead premised on a preference for review of reasonable efforts

---

[1]    The record in this case reflects that the magistrate court made the requisite finding regarding the Department's reasonable efforts throughout the child protection case. Moreover, the magistrate court denied the Department's motion to cease reasonable efforts.

[2]    The exception for cases involving aggravated circumstances does not apply in Doe's case. Moreover, federal law also contains an aggravated circumstances exception to reasonable efforts. 42 U.S.C. § 671(a)(15)(D)(i) (2019); 45 CFR § 1356.21(b)(3)(i) (2012).

following termination rather than from the appealable orders entered following proceedings during the child protection case in which reasonable efforts are required. This preference does not, however, implicate due process. Moreover, it is contrary to the statutory scheme enacted by the legislature.

There may be important policy reasons that the legislature provided for statutory appellate review of reasonable efforts in the child protection case and did not include reasonable efforts as a required finding once a termination petition has been filed. Such considerations may include concerns for permanency and stability for the child. *See* I.C. § 16-1622(2)(g) (requiring the Department to file a petition to terminate parental rights once the child has been in the temporary or legal custody of the Department for fifteen of the most recent twenty-two months); *see also* 42 U.S.C. § 671(a)(15)(C) (2019) (providing that, if continuation of reasonable efforts at reunification is inconsistent with the permanency plan for the child, reasonable efforts should be made to place the child in accordance with the permanency plan and complete whatever steps are necessary to finalize permanent placement). Whatever the policy considerations may be, such choices are within the purview of the legislature, not the judiciary.[3] *See Idaho State AFL-CIO v. Leroy*, 110 Idaho 691, 698, 718 P.2d 1129, 1136 (1986) (stating that, in the absence of a legislative invasion of constitutionally protected rights, the judicial branch of government must respect and defer to the legislature's exclusive policy decisions).

It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under I.C. § 16-2005. The Idaho Supreme Court recently reaffirmed this principle in *In re Doe*, 164 Idaho 883, 889, 436 P.3d 1232, 1238 (2019) and rejected an assertion, similar to Doe's, that this principle violates due process. *Id.* at 889-90, 436 P.3d at 1238-39. Doe has failed to identify any due process flaw in when or how the Department's reasonable efforts are considered and reviewed in Idaho.

---

[3]     The legislature is also the proper forum for presenting testimony regarding considerations relevant to when and how reasonable efforts should be reviewed during the course of the child protection case, including what actions should or should not be taken in the case during the pendency of any appellate review.

**B.**     **Termination**

   **1.**     **Statutory basis**

Doe argues that moving her child out of state made it impossible for her to complete "important and significant portions" of her case plan making it improper to terminate her parental rights for failure to do so. We hold that the magistrate court's determination that Doe neglected her child was supported by clear and convincing evidence.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her

parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Doe's case plan required her to: (1) complete a substance abuse screening and follow all recommendations; (2) complete a mental health assessment and comply with all recommendations made by the mental health provider; (3) complete a parenting course to learn new skills and develop her role as a caretaker; (4) participate in a healthy relationships class or group and demonstrate the skills learned in caring for the child and interacting with others; (5) participate in regular visits with the child to continue creating healthy attachments and demonstrate her ability to implement the techniques learned in parenting classes; (6) demonstrate the ability to provide and care for the child's basic, developmental, medical, and other needs as they arise; and (7) maintain stable housing for 120 consecutive days and provide proof of stable housing to the Department. The magistrate court found that during the nearly two-year period that the child was in foster care, Doe failed to "complete the tasks in her case plan that would allow the safe return of her child to her care." In support of this conclusion, the magistrate court found that communication with Doe was difficult throughout the child protection action; Doe "deflected issues that needed to be addressed and placed blame on others for the issues that prevented [the child] from safely returning to her care"; Doe failed to establish safe and stable housing; Doe's mental health issues remained unaddressed; Doe did not avail herself of the opportunity to learn about healthy relationships; Doe's visitations with the child were inconsistent and Doe's hostility toward the foster mother negatively impacted her visitations; and Doe did not overcome her substance abuse issues despite having nineteen months to do so. With respect to Doe's substance abuse, the magistrate court noted that Doe continued to test positive for controlled substance during the child protection case and was not forthright about her substance abuse issues.

The magistrate court also found clear and convincing evidence that Doe did not exercise proper parental care and control over her child. Doe did not provide subsistence, education,

medical, or other care and control necessary for the child's well-being. Finally, the magistrate court found that, other than sending the child a box of toys, Doe did not provide consistent support for the child while she was in foster care.

Doe asserts that the magistrate court erred in finding that she neglected the child by failing to complete the case plan because it was impossible for her to complete two of the tasks in the case plan once the child was placed out of state. Specifically, Doe argues that her efforts to accomplish two "important tasks" in her case plan "were utterly frustrated" when the child was moved out of state. The two tasks Doe identifies as impossible to complete are Task 1.1.1.5 (which required her to participate in regular visits with the child in order to create healthy attachments and implement proper parenting techniques) and Task 1.1.1.6 (which required Doe to demonstrate an ability to provide for the child's basic developmental, medical, and other needs). However, the magistrate court found that, while moving the child out of state presented difficulties, those difficulties were not insurmountable.

With respect to visitation, the evidence presented at trial showed that the Department attempted to assist with visitation by referring Doe to an independent service provider so that visits could take place through an independent party. However, Doe missed so many visits that she was dropped from the service. The Department resumed facilitating the visitations and Doe again missed the majority of them. After the magistrate court authorized out-of-state placement when the child's foster parents moved, the foster family facilitated video calls between Doe and the child, as well as an in-person visit when the family returned to Idaho. However, the in-person visit "did not go well." Doe's failure to participate in scheduled visitations was within her control and not rendered impossible by the child's placement out of state.

The child's out-of-state placement during the child protection case also did not prevent Doe from demonstrating the ability to provide for the child's basic needs. Providing a single box of toys falls short of establishing that Doe has the ability to provide for the child's developmental, medical, and other needs, especially the particular needs of Doe's child. The evidence showed that the child had medical needs to which Doe was not attentive. The child "got sick quite a bit" and suffered from stomachaches, night terrors, and gallbladder issues that were likely attributable to "a lot of stress and anxiety." The child also "expresse[d] a lot of fear about being with her mom." When the social worker tried to speak with Doe about the child's

medical issues, Doe would focus on her complaints about the court system. By comparison, while in foster care, the child received medical attention, including going to the dentist, getting glasses, updated immunizations, and regular counseling.

Although Doe made some efforts relating to the tasks in her case plan, which the magistrate court acknowledged, there was substantial and competent evidence to support the magistrate court's finding of neglect, and Doe has failed to show error in this finding.

### 2. Best interests of the child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that it is in the child's best interests to terminate Doe's parental rights because Doe was not stable enough to parent the child and meet the child's needs. The magistrate court found that Doe had "a long road ahead to achieve sobriety and stability" and that the child suffered from stress and other somatic symptoms and needed the permanency of a loving and stable environment. The magistrate court noted that the child was doing well under the care of her foster family and that the family was a permanent placement option for the child.

Doe asserts that, had she been "given a chance" to show "mastery" of the tasks she deemed impossible to complete once the child was moved out of state, it "could have been evidence negating a finding that termination was in the best interest of the child." Doe contends that the child instead bonded with her foster family, which weighed against Doe in the best interests analysis. Doe was given ample opportunity to complete her case plan during the two

years the child was in foster care and, as noted above, the child's out-of-state placement did not make it impossible for Doe to complete the visitation and care-related tasks. Moreover, Doe's history with substance abuse (including ongoing use during the child protection case), her lack of stable and permanent housing, her failure to contribute to the child's care after the child was placed in protective custody, and the child's improvement while in foster care all support the magistrate court's best interests determination. Doe has not shown error in the magistrate court's finding that termination is in the child's best interests.

## IV.

## CONCLUSION

The reviewability of the Department's reasonable efforts at reunification does not violate due process. There was clear and convincing evidence that Doe neglected the child and that it is in the best interests of the child for Doe's parental rights to be terminated. Accordingly, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.